The next case call for oral argument is People v. Mosley. Counsel, whenever you're ready. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Counsel. The sole issue raised in this appeal is simple and straightforward. My client, Bernard Mosley, was in continuous custody on the offense for which he was ultimately convicted for 187 consecutive days before he was tried, 67 days more than the law permits. Therefore, his statutorily protected right to a speedy trial is violated and his conviction must be reversed, that being the only relief he can receive at this point since he's already served his sentence. The only reason why the State has even the appearance of an argument in this case is the fact that on Day 4 of his confinement, the State voluntarily surrendered Mr. Mosley to federal authorities to serve time on a parole violation arising from the same act, and he was not returned to State custody until Day 88. But that doesn't matter. He was still in custody on this offense, and this issue was settled by the appellate court in People v. Stanitz in 2006. Now, in this appeal, the State has not challenged Stanitz but has attempted to distinguish it by making a mountain out of a molehill or possibly a flat surface, arguing that because Mr. Mosley was originally charged with a misdemeanor, which the State later elevated to two felonies after Mr. Mosley was in federal custody, this court should buy into the legal fiction that those first four days in which Mr. Mosley was confined to a cage don't really count, and we should all pretend that he was initially in federal custody. Well, does it make any difference whose custody he's in? Well, absolutely. There has to be, at some point, he has to be in State custody for the clock to start ticking. Right. But he was, and that is my point. And you cannot simply take the fact, the very commonplace occurrence, that he was initially charged essentially by the police when he was first arrested with misdemeanor domestic battery, and five days later, after, one day after the State voluntarily surrendered him to the federal authorities, the State decides to elevate him to two felony aggravated battery counts. And if we think about the implications of the State's argument, what that is basically saying that as long as the State charged him with something other than domestic, misdemeanor domestic battery, it could have waited months before it charged him, and none of that would have counted for speedy trial purposes. That is not an argument of legal fiction, creative though it is, that this court should buy into. And as a matter of fact, here again, it's something that has already been determined by reviewing courts, for example, in People v. Makes, where there was a, there actually was a 30-month delay between the arrest and the filing of an information, and the court held that the right to a speedy trial attaches when a criminal prosecution has begun, such as by arrest, on the charge for which the accused is subsequently charged. And in People v. Roberson, our Supreme Court held that, and I'm quoting, once a defendant is arrested for an offense, he or she is clearly in custody for that offense, even before he or she is formally charged. So there is no weight to the State's argument here. We cannot buy into this legal fiction that it has composed for us in this case. The State's argument also conflicts with the position it took in the court below, where the Assistant State's Attorney admitted that the defendant was in jeopardy, and I'm quoting, from July 6th, that's the arrest date, on this offense. So there is also a contradiction in the position taken by the State in this case. And I might mention also that there was no issue here that the State voluntarily released Mr. Mosley to federal authorities. That is in the record that the State admitted this. This basically was discussed when the court was discussing sentencing credit, which is how all this came out. Nonetheless, the State, there was no contesting the issue that it was a voluntary surrender to the federal authorities. Just touching on a couple of other points here, because I do think this is very straightforward. There's no issue about the reviewability of this issue, because the plain error doctrine clearly applies, this being an issue of constitutional authority and gravity. And I just wanted to briefly touch on one of the other cases. We addressed all of the cases cited by the State in our reply brief, of course. But one in particular, the Mitcrick case, which the State cites, that was the case where the defendant was arrested and charged in Cook County, and then DuPage County came along and cited him with a warrant and filed a complaint in DuPage County. But he wasn't actually served with it, and no action was actually taken by DuPage County until he was brought back to DuPage County two months later. That's clearly distinguishable from the instant case. What happened in the Mitcrick case is the State did not take any action to detain the defendant in that county until they brought him here to DuPage County. That's simply not apposite to the instant case, because in this case, St. Clair County clearly had him in custody. He was in jail initially for those first four days before he was turned over to federal authorities. With that, if there are no further questions, this being a speedy trial case, I will make this a speedy argument and reserve the rest of my comments for a vote.  Thank you, counsel. Good morning, Your Honor. May I please support Mr. Whitney? My name is Patrick Daly. I'm with the Office of the State's Attorney's Appellate Prosecutor for People. With the Court's indulgence, I want to start my argument with a hypothetical, if you will, or slight alteration in the facts of this case, which I think might illustrate best the State's position. Before doing so, I do want to correct one thing. During counsel's argument, I think incorrectly frames the argument that I'm attempting to make before this Court. I'm not alleging that the defendant was originally charged with a misdemeanor, which then the State then later elevated to a felony. In fact, I'm arguing exactly the opposite. The defendant was never charged with anything at the time the federal authorities took him into custody. And that the State then filed charges against him, felony charges, after he was already in federal custody, which under these circumstances would have required a defendant to invoke the Protection of the Interstate Detainers Act. Then what was he arrested on? He was arrested on... There are things that we have in this case we know and don't know, okay? We'll just work with what we do. We know that he was arrested for domestic battery. He's being held for domestic battery. As best as we know, it was a probable cause arrest. I'm sorry, a probable cause arrest. A probable cause arrest. There's nothing in the record to show that he was charged with domestic battery, that there was a warrant issued for him for domestic battery. Now, if these things exist in the record, then perhaps the defendant's argument might have a little bit more traction. But since we don't know that right now, if there is an ineffective assistance of counsel argument, perhaps it's something that's better left at this point for a post-conviction claim. But all we know at this point is the defendant had been arrested for domestic battery and was being held. And there's nothing to show that he was being charged for it at that time. Let me give you my hypothetical, and perhaps it will strike my point. Let's suppose that the defendant is arrested on July the 6th, as he was here, on probable cause for an arrest for domestic battery. And that's something that the police can do, and they have to be held. And there are certain statutory limitations on when they have to be brought before a neutral magistrate. They have to have a probable cause of termination, bond set, et cetera, et cetera. But at this point, all we have is that he was arrested on a charge. At that point, nothing, there's no indication of record of any formal charges were filed. Now, back to the hypothetical. July the 9th, federal authorities come. At this point, there's no indication of any charges were filed against the defendant. And federal authorities take him back into custody on apparently a parole hold or parole violation, federal parole violation. 187 days later, the state, after conducting an exhaustive investigation, talking to witnesses, perhaps getting DNA evidence from the crime lab, then files a formal charge against the defendant of attempted murder. Under the defendant's premise here, the minute that that charge hits the docket, you know, the inkling isn't even dry yet, the defendant is entitled to a speedy trial discharge. Why? Because under the defendant's premise here, that arrest essentially dictates everything that happens after that. In fact, it's almost a de facto limitation on the limitations period that once the defendant's arrested for something, something's got to happen in 120 days for the defendant's entitled to speedy trial discharge. Heck, the defendant may not get charged with anything. And that's the whole point that I'm trying to make here is that if you're going to invoke your right to a speedy trial, there has to be something upon which you're going to be trying for, for that trial right to attach. And that's why I want to talk a little bit here about the Stannis case, because I don't disagree with the Stannis case. I don't challenge it. I think that what the state did in Stannis is a little squirrely anyway. But there are some, there are critical factual circumstances in Stannis. Now, I think they were all in agreement, or at least myself and the Stannis court are in agreement, that a defendant's sole, sole recourse, if they're charged in defense when they're already in federal custody, is that they have to resort in order to invoke their speedy trial rights to the interstate containers. Okay. What happened in Stannis is the defendant was charged on July 2004, was arrested on that charge in September 2004, and then later, I think it was April 2005, filed a motion for discharge. What, what happened was that in January, on day 119 of what the court at least accepted for purposes of argument, it was a speedy trial time period, federal authorities came in, took the defendant away. And then the state said, well, you know, he's in federal custody. He has to invoke the Interstate Detainers Act. And what the court said is, no, you know, he is already in custody, charged and in custody. I believe the exact words that the court had used when federal authorities took him away. Speedy trial is not something we attribute against the defendant when the defendant is not, you know, responsible for the delay that's caused. In none of these particular circumstances, the defendant's speedy trial rights were violated because the state had allowed him to be taken away. But what's critical in that case, of course, is the defendant was charged. He was under bond. He had speedy trial rights that the court made clear. In fact, here's how the issue is framed by the Stannis court explicitly. One of those states voluntarily surrendered the defendant to federal authorities, told the speedy trial time period they had already commenced. Well, the speedy trial period, you know, commences when, you know, you're in custody for a particular offense. The defendant here was arrested. I acknowledge that. And he was being held on probable cause, as appalled by all appearances in the record. But he hadn't been charged with anything yet when the federal authorities came. The only distinction between the hypothetical that I gave this court and what happened in this case is just a matter of time difference between when the state found the charge in the hypothetical and when the state charged it in this case. But in both instances, the charge didn't come until after the defendant had already been taken away by federal authorities. Regardless of when the charge or a particular charge was lodged against the defendant, from the time that he was arrested, wasn't he in custody? He was in custody. He was in custody based upon the basis of the arrest. No, I, for whatever reason. I don't, I don't, I don't dispute his in custody status. What I do dispute is that he's in custody for purposes of speedy trial computation. And there's a distinction because, as I said, in this instance, there, there was no charge against what they had been lodged against him. If you apply the principle of defense argument, then, then in any instance where the state would file a charge, a charge against the defendant within, within a limitations period while in defense of federal custody would be automatically excluded as a violation of speedy trial time period. Even though there's no charge against which the state could have brought the defendant to trial within 120 days when he'd been arrested. The arrest doesn't have a charge. The arrest, and it has particular considerations, certainly in, in, in some circumstances. But under the facts of this case, it was particularly related against the facts of the Stannis case, that it's a distinguishable situation. And we would submit that under that distinction as a critical one. So again, I just want to emphasize that it's not a position that he was charged with something. There's no evidence at least in this record that he was charged with anything. You know, it's all, it appeared that the state had reviewed the police reports and made a decision to charge him with a two counts of aggravated battery as was his right. But we're not arguing an elevation. We're arguing a charge, an initial charge, if you will. So I just want to take, take these things into consideration. A distinguishing factor from Stannis is that the finding of counsel was not an effective nor was there a plain error. And the lack of a motion for discharge of speed trial. Does that answer your question, Mr. Foreman? I appreciate your time. Thank you. Thank you. I have one question. Was he or was he not charged when the feds took him? Did he have any, did he appear before a judge or anything? I don't believe that he had had, he might have had the initial first appearance where there's a public defender assigned. But I don't, there was no probable cause hearing or anything like that. That did not occur to us at this time. And was there a charge? Was there a complaint filled out? I believe he was just arrested. I don't believe that there was any formal complaint that was issued until subsequently. Okay. Had a bomb been set, Mr. Whitney? My pardon? Had a bomb been set? Yes. I'm pretty certain that a bomb had been set. I cannot say that with 100% certainty, but I believe that it had at that point. He was certainly not free to leave. He was held in a jail for those first four days based on this arrest. And that's really, I think, the key factor, that he was in custody. And the state admitted he was in continuous custody from July 6th. That was the statement, one of the statements made by the Assistant State's Attorney in the court below. In fact, the state admitted he was in jeopardy from July 6th, 2012, for this offense. That is an exact quote from the Assistant State's Attorney. So that was the position taken by the state in the court below. Really, the issue is not arrest, as the state is attempting to argue here. And in looking at the state's hypothetical, if a defendant had been arrested and then released, and then the state had further investigation, found more evidence, then decided, aha, we do have enough to charge this man with something else, with attempted murder, whatever it is, that would be a different case. But here he was in continuous custody. He was held in jail for those four days. So we cannot embrace a new rule of law based on this hypothetical unless we're prepared to challenge the already settled precedent of cases like Roberson and Mace that I cited earlier. And there's a larger philosophical issue here as well. And if you go back in the case law to the cases like Swartz back to 1961, which is what the Stannis case was predicated upon, it's the idea that the substantial rights of speedy trial, guaranteed by both the federal and Illinois constitutions, must be liberally construed, and I'm quoting from the Fosdick decision back in 1967 by our Supreme Court, and that salutary provisions cannot be frittered away by technical evasions. That's the danger, I think, that we're trying to guard against here. You cannot manipulate the system, so to speak, and that was the issue in Swartz. And Stannis, by taking advantage of these procedural issues and procedural changes, when the fact is the guy's locked up, and he's locked up based on the state charge. And so that really, I think we have to cut through what the state is positing here, and really the issue is continuous custody. He was in continuous custody for 187 days before he was tried, after behest of the state. They voluntarily surrendered him to the feds for a good part of that period, but that doesn't matter. He was in state custody throughout that period. He didn't get his trial within the statutorily projected time. How voluntary is it when the feds come and say, you have him, we want him, we've got an articulable charge against him, they can take him either voluntarily or involuntarily. So isn't it, as a practical matter, a matter of prudence to say, here he is, let us know when you can bring him back? Well, I don't know whether the federal authorities necessarily could have done that. We have nothing on the record. No, I realize that. I'm just talking in any practical aspect. Right. But the state still could have brought him back to court for trial within 120 days, regardless. So even if there may have been reasons why they voluntarily surrendered him, he still could have been tried within 120 days. He could have been written back to state court for that. So I don't think that that really changes our conclusion here. Does your position penalize a state police agency that picks up someone on probable cause, has not been challenged in a hearing, and has the good sense to go to an assistant state's attorney to find out what charge will actually lodge, and it takes a couple of days. Does your position penalize a police agency that will actually seek the advice of the assistant state's attorney so they can proceed in a logical and effective manner? I don't believe it does. As a matter of fact, that's basically... Yeah, please. Yeah, I think that's basically what did transpire. They did file the felony information on day five, the day after Mr. Mosley was turned over to federal authorities. Again, he could have still been tried within 120 days. I don't think that that creates a punishment here. I think that basically the state here not only voluntarily surrendered him, the federal authorities also voluntarily elected not to bring him back in time to try him within 120 days. Thank you, Your Honor. Thank you. Okay, we appreciate the briefs and arguments of counsel, and we'll take the case under advisement.